938 P.2d 1214

Clark PETERSEN, Fred Olson, Marvin Packer, Nancy Higgs, Richard Owen, Terry Andrade and Debbie Andrade, Plaintiffs–Appellants–Cross Respondents,

v.

FRANKLIN COUNTY, A Political Subdivision of the State of Idaho, Acting Through the Franklin County Board of Commissioners, and Jeff Olson, Commissioner, Brad Smith, Commissioner, and Dale McKay, Commissioner, Defendants–Respondents–Cross Appellants.

No. 21943.

Supreme Court of Idaho, Pocatello, September 1996 Term.

May 30, 1997.

A. Bruce Larson, Soda Springs, for Plaintiffs–Appellants–Cross Respondents.

Anderson, Nelson & Hall, Idaho Falls, for Defendants–Respondents–Cross Appellants. Blake G. Hall argued.

SCHROEDER, Justice.

This is a combined appeal from a civil action brought pursuant to section 67–2347(4) of the Idaho Code, concerning the open meeting laws, and a petition for review of an agency action brought pursuant to the Idaho Administrative Procedure Act ("APA") as provided in section 39–7420(4) of the Idaho Code, concerning site selection of a solid waste landfill. The appellants are landowners ("Landowners") in Franklin County, Idaho, who own property bordering or near a proposed landfill site. The respondent is Franklin County, and its Board of County Commissioners, which is charged with the duty of selecting the landfill site.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

In 1970 the legislature enacted chapter 44, title 31 of the Idaho Code which provides that the board of county commissioners in each county is authorized to acquire, establish, maintain and operate solid waste disposal systems. I.C. §§ 31–4401, –4402. In 1992 the State of Idaho adopted the Idaho Solid Waste Facilities Act ("ISWFA"), I.C. §§ 39–7401 to –7421 (1993 & Supp.1996), which corresponds to the provisions of the Resource Conservation and Recovery Act, 42 U.S.C.A. §§ 6901 –6992K (West 1988).

On February 26, 1990, the Franklin County Commissioners ("Commissioners" or "Commission") were notified by the Idaho Department of Health and Welfare that under federal regulations the existing Franklin County landfill was subject to closure. 40 C.F.R. Parts 257 & 258 (1984). During the latter part of May 1992 the Commissioners toured Franklin County looking for potential sites to construct a new landfill. On one occasion the Commissioners were accompanied by the chairman of the geology department at Idaho State University. Five potential sites were identified as a result of these investigations including a site located approximately four miles northeast of Preston, Idaho. That site is referred to as the "Riverdale–Glendale" divide ("Riverdale–Glendale") and is the subject of this appeal.

The Commission discussed selecting a landfill site several times at regularly scheduled meetings, considered alternative site locations, formed a citizens' advisory group to help it evaluate waste disposal in the county, and entered into a contract with MSE, Inc. ("MSE"), an engineering firm, to have various hydrological and soil studies performed at the Riverdale–Glendale site.

On July 8, 1993, and July 12, 1993, the Commissioners and the advisory group made separate evaluations of the Riverdale–Glendale site and of four more sites previously identified as potential locations for a new landfill. The public was not given notice that either body would be evaluating potential sites.

No formal vote was taken nor resolution adopted by the Commission memorializing its intention to focus on the Riverdale–Glendale

site, but by July of 1993 the Commissioners had made a "conditional" decision arrived at by "common agreement" to concentrate their efforts on acquiring land at that site. On September 27, 1993, and September 30, 1993, the Commission obtained options to purchase and conduct studies of land located at the Riverdale–Glendale site. The land-purchase options were recorded on September 27, 1993, and October 5, 1993.

At their October 25, 1993, regular meeting the Commissioners held a lengthy discussion concerning the Riverdale–Glendale site and decided to pursue development of a new landfill at that site. However, minutes of the meeting show the Commissioners still referred to the site as the "proposed site."

At their January 10, 1994, regular meeting the Commissioners scheduled a public hearing for January 26, 1994, to receive public comment and review site certification documentation and a groundwater monitoring plan for the "proposed site." On January 12, 1994, and January 19, 1994, notice of the hearing was published in the *Preston Citizen*, the local newspaper.

At the January 26, 1994, public hearing the chairman of the Commission presented various reasons for selecting the Riverdale–Glendale site as the proposed site for the new landfill. The chairman was followed by a hydrogeologist who presented findings about the site. Comments for submission to the Idaho Department of Health and Welfare, Division of Environmental Quality ("DEQ") were also solicited. Shortly after the public hearing the Commissioners filed a Certification Application dated January 26, 1994, with the DEQ proposing development of the landfill site at Riverdale–Glendale. The Commission did not publish legal notice of the application as required by section 39–7408(d) of the Idaho Code. The Commission stated in the Certification Application that it had not adopted a land use plan or zoning ordinance.

On March 17, 1994, the Commissioners met with at least four Landowners who opposed locating the landfill at Riverdale–Glendale. An environmental engineer and a hydrogeologist were also present during this meeting which was apparently private. One of the Landowners asked if they had exhausted their administrative remedies at that point and apparently received an affirmative answer. The Landowners were also given guaranties that if the landfill impaired their culinary water supply the County would provide them with an alternative water source.

Later on March 17, 1994, the Commissioners met with other residents of Franklin County. No legal notice was given prior to this meeting, but an article appeared in the *Preston Citizen*, apparently sometime before March 17th, stating that the Commissioners would hold an "informational" meeting. Various presentations were made and the Commissioners were informed that a petition bearing the signatures of over 300 people opposed to locating a landfill at Riverdale–Glendale would be presented to them at their next meeting.

On March 16, 1994, the DEQ responded to the County's application stating that because Franklin County had no land use plan, the factors outlined in section 67–6508 of the Local Land Use Planning Act would have to be addressed prior to issuance of a site certification. The Commission filed a revised Certification Application with the DEQ on May 11, 1994. The Commissioners also submitted to the DEQ an affidavit of the Franklin County Clerk dated April 29, 1994, attesting that Franklin County had developed a land use plan, that there were "no planning and zoning restrictions in Franklin County," and that no "public hearings or consent are required to qualify the subject site pursuant to planning and zoning laws."

The Landowners filed their Complaint/Petition for Review on April 1, 1994, seeking judicial review of the Commission's site selection. The Landowners alleged: (1) that the Commissioner's decision was arbitrary and capricious, in excess of authority, and an abuse of discretion; (2) that the Commissioners had violated sections 67–2340 through 67–2347 of the Idaho Code by failing to make site selection decisions in accordance with

Idaho open meeting law; and (3) that the Commissioners had violated section 31–7107 of the Idaho Code by failing to provide for a method of initiative and/or referendum within the county.

The Commission moved to dismiss the Complaint/Petition for Review as time barred. The parties stipulated that the motion to dismiss would be treated by the district court as a motion for summary judgment. The district court determined that:

(1) no formal decision or roll-call vote was required for the County to make its site selection;

(2) although no formal decision was recorded regarding site selection, the Commissioners selected the site on October 25, 1993;

(3) the Landowner's petition for judicial review was not untimely due to the indeterminacy of when the Commissioners made their site selection;

(4) the Commissioners were not required to base their decision exclusively on the record;

(5) the County's failure to publish legal notice of its application with the DEQ was not a "fundamental error" in light of the Commissioners' compliance with numerous other statutory provisions concerning selection of the site;

(6) the site selection did not violate public meeting laws, nor was it based on unlawful procedure; and

(7) the Commission failed to provide a method for initiative and/or referendum in the County.

The district court entered summary judgment in favor of the Landowners on the issue of the County's failure to provide for initiative and/or referendum and awarded $4,500 in attorney fees. The district court entered summary judgment in favor of the Commission in all other respects.

The Landowners moved for reconsideration of the decision on the basis that the court failed to make a finding that the Com-

mission complied with section 39–7407(2)(d) of the Idaho Code which restricts landfill site locations. The Landowners alleged that the County had no land use plan, or if it did the site was located at variance with that plan. The Commission responded with an affidavit of the Commissioners stating that they had misunderstood a question in the original application for certification and so erroneously answered that Franklin County had no land use plan. The affidavit stated that the County has a land use plan which contains an analysis of the factors set forth at section 67–6508 of the Idaho Code.

The district court issued Supplemental Findings of Fact, Conclusions of Law and Judgment, in which it determined that the County had a land use plan but no zoning ordinance, and there was no evidence that the site location was at variance with that plan.

## II.

### STANDARD OF REVIEW ON SUMMARY JUDGMENT

In ruling on the Landowners' claim of a violation of the Idaho open meeting laws, I.C. §§ 67–2340, –2347, the district court granted summary judgment in favor of the Commission. When this Court reviews the district court's ruling on a motion for summary judgment it employs the same standard properly employed by the district court when originally ruling on the motion. *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995); *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). Both this Court and the district court liberally construe the record in favor of the nonmoving party, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck*, 127 Idaho at 200, 899 P.2d at 413.

## III.

### ACTIONS ALLEGED TO BE IN VIOLATION OF THE OPEN MEETING LAWS MUST BE CHALLENGED WITHIN THIRTY DAYS OF THE ALLEGED VIOLATION TO BE DECLARED NULL AND VOID.

The Landowners challenge the district court's determination that the Commissioners did not violate Idaho's open meeting laws, arguing that there were steps taken in the site selection process that were not in compliance.

Section 67–2347 of the Idaho Code provides that if an action, or any deliberation or decision-making that leads to an action, occurs at any meeting which fails to comply with the open meeting laws the action is "null and void". Section 67–2347(4) provides for a private right of action, and any suit brought for the purpose of having an action declared "null and void" must be commenced within thirty (30) days of the time of the alleged violation. The question presented is the status of actions taken at a meeting which violated the open meeting laws: is the action null and void *ab initio,* as is indicated by the language of section 67–2347(1), or does the action only become null and void after a complaint is filed within the thirty (30) day period set forth in section 67–2347(4) and the court declares the action null and void?

■ A statute should be construed so that effect is given to its provisions, and no part is rendered superfluous or insignificant. *Brown v. Caldwell Sch. Dist. No. 132,* 127 Idaho 112, 117, 898 P.2d 43, 48 (1995); *In re Matter of Permit No. 36–7200 in Name of Idaho Dep't of Parks & Recreation,* 121 Idaho 819, 822–23, 828 P.2d 848, 851–52 (1992). If actions in violation of the open meeting laws were void without a challenge, the provisions of I.C. § 67–2347(4) would be meaningless. Consequently, actions taken by the Commissioners that were not challenged

within the time provided by section 67–2347(4) are not void under the open meeting laws.

## IV.

### THE "FINAL" DECISION WAS MADE AT THE JANUARY 26, 1994 MEETING.

Section 67–2340 of the Idaho Code expresses the public policy of the State of Idaho that formation of policy should be conducted at open public meetings. Counties are among the "public agencies" which must comply with the open meeting laws. I.C. § 67–2341(4)(c). Under section 67–2342(1) meetings of governing bodies shall be open to the public, and no decision of a governing body of a public agency shall be made by secret ballot. A "governing body" is comprised of members of any public agency with the authority to make decisions for or recommendations to a public agency regarding any matter. I.C. § 67–2341(5). A "decision" is "any determination, action, vote or final disposition upon a motion, proposal resolution, order, ordinance or measure on which a vote of a governing body is required. . . ." I.C. § 67–2341(1).

The district court found that the Commissioners made their final site selection at the October 25, 1993, meeting and that the meeting did not violate the open meeting laws. The record does not support the finding that the final site selection was made at the October 25, 1993 meeting. Drawing all reasonable inferences in favor of the non-moving party, the Landowners, the record establishes that the Commissioners made the "final" decision regarding site selection at their January 26, 1994 meeting at which time the Commission also announced it would submit its recommendation and findings to the DEQ for certification.[1] Following the meeting the County submitted the application to DEQ. The January 26, 1994 meeting was preceded by adequate notice and was attended by the public.

■ This is not to say that the Commissioners may not have violated the open meet-

---

1. The County in briefing to this Court states:
   "There can be no question that no later than January 26, 1994, the County had made the final decision selecting the site which it would pro-

pose to the DEQ for certification." While the Landowners make no similar assertion, there can be no "reasonable" inference made other than

ing laws in previous meetings. There is evidence in the record that the October meeting relied upon by the district court was held in violation of the open meeting laws. There is also evidence in the record that it was common-place for the Commissioners to fail to give notice by posting an agenda in accordance with Section 67–2343(1) of the Idaho Code. However, these violations do not effect the status of the January 26, 1994 meeting. It was conducted in accordance with the open meeting laws, and the Commission's final decision made at that meeting is not tainted by the impropriety of any preceding actions that were not challenged in a timely manner. *State ex rel. Roark v. City of Hailey,* 102 Idaho 511, 514, 633 P.2d 576, 579 (1981).

## V.

### STANDARD OF REVIEW OF AGENCY ACTION

█ This Court reviews agency decisions independent of appellate decisions by the district court. *Howard v. Canyon County Bd. of Comm'rs.,* 128 Idaho 479, 480, 915 P.2d 709, 710 (1996); *Willig v. State Dep't of Health & Welfare,* 127 Idaho 259, 261, 899 P.2d 969, 971 (1995); *Boise Group Homes, Inc. v. Idaho Dep't of Health & Welfare,* 123 Idaho 908, 909, 854 P.2d 251, 252 (1993); *Dovel v. Dobson,* 122 Idaho 59, 61, 831 P.2d 527, 529 (1992).

█ The Court may reverse or modify if substantial rights of the parties have been prejudiced by administrative findings which violate constitutional or statutory provisions, are in excess of authority, are made upon unlawful procedure, or are clearly erroneous or arbitrary and capricious. *Dovel,* 122 Idaho at 61, 831 P.2d at 529 (citing *State ex rel. Richardson v. Pierandozzi,* 117 Idaho 1, 784 P.2d 331 (1989)). Factual determinations are not erroneous when they are supported by competent and substantial evidence even though conflicting evidence exists. *Wulff v. Sun Valley Co.,* 127 Idaho 71, 73–74, 896 P.2d 979, 981–82 (1995). Erroneous conclusions of law made by an agency may be corrected on appeal. *See Love v. Board of County Comm. of Bingham County,* 105 Ida-

that the decision was "final" when the applica-

ho 558, 671 P.2d 471, appeal after remand, 108 Idaho 728, 701 P.2d 1293 (1985).

## VI.

### IDAHO CODE SECTION 39–7420(4) PERMITS THE LANDOWNERS TO SEEK REVIEW OF THE COMMISSION'S SITE SELECTION UNDER THE PROVISIONS OF THE ADMINISTRATIVE PROCEDURE ACT.

█ An "agency" is a "*state* board, commission, department or officer authorized by law to make rules or to determine contested cases...." I.C. § 67–5201(2) (emphasis added). Therefore, an agency is a state entity empowered to affect an individual's legal rights or duties. *See* Michael S. Gilmore & Dale D. Goble, *The Idaho Administration Procedure's Act: A Primer for the Practitioner,* 30 Idaho L.Rev. 273, 282 (1993). A county board of commissioners does not fall within the definition of an "agency" for purposes of applying the APA in its totality. *See* I.C. § 67–5201(2). However, the Commission's decisions are subject to judicial review under the Solid Waste Facilities Act (ISWFA):

A private right of action in behalf of any person who has been injured or damaged by any approval authorized in this chapter or violation of the terms of any approved or regulation authorized in this chapter may be maintained in accordance with the provisions of this chapter and/or the provisions of chapter 52, title 67 Idaho Code, as applicable.

I.C. § 39–7420(4).

The Commission claims that under the ISWFA, it merely selects sites and that the selection does not constitute an "approval authorized" under the ISWFA. According to the Commission, the DEQ approves and certifies proposed sites. Consequently, the approval that is subject to review is that of the DEQ, not the Commission's selection of a site.

█ The term "approval authorized" is not defined in the ISWFA, but the legislative purpose and structure of the ISWFA support the conclusion that selection of a landfill site by the Commission is within the contempla-

tion was filed.

tion of "approval authorized" which may be reviewed.

The ISWFA provides for shared responsibilities between the state and county governments:

The county, director and health district each perform key roles in statewide solid waste management. Principal jurisdiction for the various functions of solid waste regulation and management as it pertains to site selection, development, operation, and closure shall be carried out as outlined herein.

I.C. § 39–7406(1).

The county is responsible for selecting the site, evaluating the site for compliance with certification criteria and developing a design for construction, I.C. § 39–7406(1)(a), as well as obtaining site certification and publishing adequate legal notice. I.C. § 39–7408(1), (2)(d). The Director of the Department of Health and Welfare is responsible for evaluating and making "approvals required it by federal regulations". I.C. § 39–7406(1)(b). The county applicant shall obtain all "approvals required by 40 C.F.R. 258." I.C. § 39–7406(1)(d). Location restrictions are set forth in section 39–7407 of the Idaho Code, further indicating a shared responsibility between state and county officials. Site selection by the County is a significant step in this process and falls within the "approval authorized" contemplated by I.C. § 39–7420(4), and, therefore, is subject to judicial review.

## VII.

**THE TIME FOR FILING A PETITION FOR REVIEW OF THE COMMISSION'S SITE SELECTION WAS TOLLED BECAUSE: (1) THE PUBLIC HAD NO WAY OF KNOWING THAT THE DECISION WAS FINAL, AND (2) THE LANDOWNERS WERE STILL ATTEMPTING TO EXHAUST THEIR ADMINISTRATIVE REMEDIES FOLLOWING THE JANUARY 26, 1994 MEETING.**

**A. The Public Was Not Put On Notice That A Final Decision Had Been Made At The January 26, 1994 Meeting.**

The district court determined that the Landowners' petition was timely due to the indeterminacy of when the Commission actually made its site selection. The record supports this conclusion. Contrary to representations made by the Commission in argument before this Court, the minutes of the January 26, 1994 meeting, at which the Commissioners made their "final" decision, does not clearly state that the decision was final. Those minutes state:

The county commissioners met at 7:00 p.m. for a Site Certification Public Hearing on the *proposed landfill* ... Several different sites were looked at by the Solid Waste Committee. The *proposed site* has low-permeable soil, isn't near any water sources, is accessed by *good roads* and isn't near any homes. This site also best meets state requirements ... Commissioner Olson made some closing comments to the people in attendance ... There are three Site Certification and Ground Water Monitoring Plans available for the public to review ... The engineers and commissioners would like comments concerning the site to be made within *thirty days to the DEQ in Pocatello or the county commissioners.* (Emphasis added).

The word "final" does not appear in the minutes. The landfill is referred to as "proposed." The public is invited to make further comments concerning the site within thirty (30) days to the Commissioners, as well as the DEQ. The public was led to believe that there was a thirty (30) day period in which to object to DEQ and the Commission about the site selection rather than a twenty-eight (28) day period in which to appeal a final decision under the APA. I.C. § 67–5273(3).

Confusion as to whether the Commission had made a final decision on site selection was compounded by the Commission's failure to publish its decision as required by section 39–7408(d) of the Idaho Code. Section 39–7408(d) provides that when the application for site certification is submitted to the DEQ the applicant shall publish legal notice of the application in the newspaper published in the county as determined by the criteria in I.C. § 31–819. The district court found that the

Commission failed to publish this notice but that the failure was not a fundamental error and declined to invalidate the site selection on that basis. However, failure to publish the notice, together with the failure to announce a final decision and the invitation to make further comment to the County deprived the public of adequate notice that the twenty-eight (28) day time period for appealing the site selection had begun to run.

### B. The Time For Filing A Petition Was Tolled While The Landowners Attempted To Exhaust Their Administrative Remedies.

Section 67–5273(3) of the Idaho Code provides:

> A petition for judicial review of a *final* agency action other than a rule or order must be filed within twenty-eight (28) days of the agency action, except as provided by other provision of law. The time for filing a petition for review *shall be extended during the pendency of the petitioner's timely attempts to exhaust administrative remedies,* if the attempts are clearly not frivolous or repetitions.

I.C. § 67–5273(3) (emphasis added).

The Landowners were attempting to exhaust their administrative remedies as late as March 17, 1994, when Landowners met with the Commissioners. The Landowners asked and were told at the March 17, 1994 meeting by at least one commissioner that, at that point, they had exhausted their administrative remedies.

In oral argument before this Court and in its brief submitted to the district court Franklin County claims that the meetings held on March 17, 1994, were conducted as part of the site certification process and that these meetings were conducted at the direction of the DEQ.[2]

It is unlikely that the March 17, 1994 meetings were held as part of any public hearing process designed to comply with the site certification statutes. Nothing in the record indicates that the DEQ responded to Franklin County's original application until Thomas Mullican, a hydrogeologist for the DEQ, wrote to Dan Kennedy of MSE, Inc. Among other comments, Mr. Mullican wrote:

> Local Planning and Zoning The factors outlined in *Idaho Code Section 67–6508, Planning Duties,* must be addressed prior to issuance of Site Certification.

■■■ Mr. Mullican's letter was dated March 16, 1994, from Pocatello. There is little chance it was received by MSE Inc., in Idaho Falls before March 17, 1994. An article entitled, "Commissioners Issue Statements on Landfill" appeared in the *Preston Citizen* on an unspecified date advertising that an "informational meeting" would be held on March 17, 1994. This article seems to have run on or prior to March 16, 1994— the date DEQ first responded to the County's application. The record before this Court indicates that the meetings were scheduled and conducted independent of any direction from the DEQ. If there are facts to the contrary, they do not appear in this

---

**2.** The following exchange occurred between Justice Johnson and counsel for the County.

Johnson, J.: Were there any administrative remedies available to these plaintiffs after January 26, 1996, to challenge the selection?

Hall: No.

Johnson, J.: So what was going on on March 17th?

Hall: As part of the public comment time period
. . .

Johnson, J.: Had the commissioners at that time decided not to go forward with the application?

Hall: No.

Johnson, J. Then why did they have the hearing?

Hall: They were pressing forward with the application and they had received comment back from DEQ that there had been public concern relative to the issue of water quality. And they wanted to meet with the citizens who may be affected and to assure them that under the requirements of site certification that the Commission would in fact do anything reasonable to ensure that there was proper water quality. . . .

record.[3]

■ Exhaustion of administrative remedies generally "requires that the case run the full gamut of administrative proceedings before an application for judicial relief may be considered." *Grever v. Idaho Tel. Co.*, 94 Idaho 900, 903, 499 P.2d 1256, 1259 (1972). There is evidence in the record that the Landowners believed they were exhausting their administrative remedies following the January 26, 1994 meeting. There is no evidence that the meetings were conducted as part of the DEQ certification process rather than as an adjunct to the Commission site selection process.

■ Although the determination of a site was made at the January 26, 1994 meeting of the Commission, the time during which the Landowners could file a timely petition for judicial review of the Commission's site selection was tolled while they attempted to exhaust their administrative remedies. The Landowners continued their efforts with the Commission until they were informed that their administrative remedies had been exhausted on March 17, 1994. The Landowners timely filed their petition for judicial review on April 1, 1994, well within a twenty-eight (28) day period beginning March 17, 1994.

## VIII.

### THE DISTRICT COURT ERRED IN ALLOWING THE COMMISSION TO SUPPLEMENT ITS RECORD WITH FINDINGS OF FACT REGARDING COMPLIANCE WITH THE LOCAL LAND USE PLAN.

Judicial review of factual issues under the APA is governed by section 67–5277 of the

Idaho Code. That section specifies that "judicial review of disputed issues of fact must be *confined to the agency record* for judicial review as defined in this chapter, *supplemented by additional evidence* taken pursuant to section 67–5276, Idaho Code." I.C. § 67–5277 (emphasis added); *Hill v. Board of County Comm.*, 101 Idaho 850, 852, 623 P.2d 462, 464 (1981) (judicial review of agency factfinding is not a *de novo* review but is confined to the agency record).

The agency record is defined by section 67–5275(1)(c) as "any agency documents expressing the agency action when the agency action was neither an order nor a rule." I.C. § 67–5275(1)(c). The district court may also require the record to be corrected, I.C. § 67–5275(3), as well as allow the record to be supplemented according to the terms of I.C. § 67–5276. Section 67–5276 specifies that the court may take additional proof on any "alleged irregularities in procedure before the agency," I.C. § 67–5276(1)(b), and the "agency may modify its action by reason of the additional evidence" and file "any modifications, new findings, or decisions with the reviewing court." I.C. § 67–5276(2).

The Commission's initial site certification application stated that the County had no land use plan but that the Commission, in choosing the site, had complied with analysis of factors set forth in section 67–6508 of the Idaho Code.[4] The Landowners objected to the district court's judgment on the grounds that the court failed to make a finding that the Commission had complied with section 39–7407 concerning location restrictions and the requirement in section 39–7407(2)(d), that

---

**3.** It is the litigant's duty not only to clearly state its contentions to the trial judge, but also to make such contentions, and the rulings thereon part of the record so that they may be reviewed on appeal. *Van Velson Corp. v. Westwood Mall Ass'n*, 126 Idaho 401, 406, 884 P.2d 414, 419 (1994).

**4.** I.C. § 67–6508 requires consideration of the following components, unless there is specification why a particular component is unneeded:

  a.  Property Rights
  b.  Population

  c.  School Facilities and Transportation
  d.  Economic Development
  e.  Land Use
  f.  Natural Resource
  g.  Hazardous Areas
  h.  Public Services, Facilities, and Utilities
  i.  Transportation
  j.  Recreation
  k.  Special Areas or Sites
  l.  Housing
  m.  Community Design
  n.  Implementation
I.C. § 67–6508.

186

the Commission analyze the factors in section 67–6508 if no land use plan has been adopted. The Commission responded by submitting an affidavit of the Commissioners which stated that they had misunderstood the question on the certification application, that Franklin County did have a land use plan and that they had reviewed the land use plan and found it included the factors outlined in section 67–6508 of the Idaho Code. The district court supplemented its findings, adopting the Commission's rendition of the facts with respect to the existence of a land use plan and the Commission's compliance with that plan. The Landowners claim that the district court allowed the Commission to supplement the record with "after the fact determinations, corrections, and information."

Generally, a review is confined to the record unless, after "application is made to the court for leave to present additional evidence" it is shown to the satisfaction of the court that there were procedural irregularities before the agency, I.C. § 67–5276(1)(b), or if "there were good reasons for failure to present it in the proceeding before the agency, the court may remand the matter to the agency with directions that the agency receive additional evidence and conduct additional factfinding." I.C. § 67–5276(1)(a).

▪ In this case the parties did not make any allegation that there was a "procedural irregularity." In *Clow v. Board of County Comm'rs*, 105 Idaho 714, 672 P.2d 1044 (1983), this Court stated the following:

> In situations where no procedural irregularities before the agency are alleged and the case is heard as an administrative appeal, the hearing must be confined to the record. (citations omitted). Admitting additional evidence when procedural irregularities are not alleged in essence results in a trial de novo and this Court has stated that on an appeal from an administrative agency "a trial de novo is not a possible course of action."

105 Idaho at 716, 672 P.2d at 1046 (citing *Hill v. Board of County Commissioners*, 101 Idaho 850, 852, 623 P.2d 462, 464 (1981));

*Daley v. Blaine County*, 108 Idaho 614, 701 P.2d 234 (1985).

The district court may "remand the matter to the agency with directions that the agency receive additional evidence and conduct additional factfinding," I.C. § 67–5276(1)(a), but that was not done here. Additionally, no "application was made to the court" setting forth the Commissioner's "good reasons for failure to present [the evidence] in the proceeding before the agency" as required by I.C. § 67–5276(1)(a). The district court is not empowered to accept additional evidence outside of the agency record beyond the two exceptions in I.C. § 67–5276. While the court may "require corrections to the record," I.C. § 67–5275(3), whether or not the Commission complied with the location restrictions set forth in I.C. § 39–7407, was a factual inquiry which must be supported by the record, not a "correction." The question of whether the County has a land use plan and, if so, whether the landfill site is at variance with the land use plan should have been remanded to the Commission for development of a record following notice and an opportunity for the Landowners to be heard.

## IX.

**THE LANDOWNERS SHOULD NOT HAVE BEEN AWARDED ATTORNEY FEES ON THE ISSUE OF WHETHER THE COUNTY FAILED TO PROVIDE A METHOD OF REFERENDUM AND/OR INITIATIVE.**

▪ The district court awarded attorney fees against the County because it failed to provide a method of referendum and/or initiative, stating the following in transcript:

> [T]he commissioners had not exercised their statutory authority properly. They had failed to enact such a resolution for referendum or initiative at the time petitioners had filed their complaint. The commissioners have now enacted such an ordinance, but did so on June 13th, 1994, after the plaintiffs' complaint was filed.

The plaintiffs, because of the commissioners' failure to enact such an ordinance,

were prevented from seeking a referendum or an initiative on this issue. The Court is going to grant summary judgment in favor of [the] plaintiff on this cause of action and based on the materials submitted to the Court, the Court is aware and I've been in this business a long time, that counsel have spent many hours on this case, and I'm going to award attorney's fees to the plaintiffs pursuant to Idaho Code Section 12–121....

Rule 54(e)(1) of the Idaho Rules of Civil Procedure provides that attorney fees can only be awarded pursuant to section 12–121 of the Idaho Code when the court finds that the case was "brought, pursued or defended frivolously, unreasonably or without foundation...." I.R.C.P. 54(e)(1). The district court did not make a finding that the County defended the action frivolously, unreasonably or without foundation. In fact the County did not defend against this claim, admitting in its answer that it had failed to provide a method of initiative and/or referendum. The award of attorney fees pursuant to I.C. § 12–121 is reversed.

## X.

### CONCLUSION

The district court decision is affirmed on the determination that the Commission did not violate the open meeting laws at the hearing when the final decision on the landfill site was made and the decision that the Landowners may seek review of the Commission's site selection under the provisions of the Administrative Procedure Act. The district court is affirmed on the determination that the time for filing the petition for judicial review was tolled. The decision of the district court affirming the Commission's selection of a landfill site is vacated. This matter is remanded to the Franklin County Commissioners for further proceedings to determine if Franklin County has a land use plan and, if so, to determine if the proposed landfill site is at variance with the land use plan. The award of attorney fees against the County is reversed.

The Landowner's request for attorney fees on appeal pursuant to the private attorney general doctrine is not supported by argument or authority. No attorney fees are awarded on appeal.

No costs are awarded.

TROUT, C.J., and JOHNSON, McDEVITT and SILAK, JJ., concur.