# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34039

LOCHSA FALLS, L.L.C., an Idaho limited
liability company,

       Plaintiff-Appellant,

v.

STATE OF IDAHO, IDAHO
TRANSPORTATION BOARD,

       Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2008 Term

2009 Opinion No. 51

Filed: April 7, 2009

Stephen Kenyon, Clerk

___

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, Ada County. Honorable Michael R. McLaughlin, District Judge.

The judgment dismissing the complaint is <u>vacated</u> and the case is <u>remanded</u> for
further proceedings.

Wilson & McColl, Boise, for appellant. Lisa Rasmussen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Steven
Parry argued.

_____

HORTON, Justice

This is an appeal by Lochsa Falls, L.L.C. (Lochsa Falls), a developer, from an order of

the district court dismissing its complaint against the Idaho Transportation Department (ITD) and

the Board of ITD for failure to exhaust administrative remedies. Because we find that no

administrative remedies were available in the instant case, we vacate the judgment dismissing

Lochsa Falls' complaint and remand for further proceedings consistent with this opinion. We

decline to award attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lochsa Falls is the developer of a 254 acre subdivision located along US Highway 20/26

(Chinden Boulevard) between Linder and Ten Mile roads, in Meridian, Idaho. The development

includes approximately 740 residential lots. The development, according to Lochsa Falls' traffic

consultant, Washington Infrastructure Services, is estimated to generate 12,480 vehicle trips per day, with 1,396 trips during the peak hour.

In January of 2003, Lochsa Falls presented a preliminary plat of the entire subdivision to the City of Meridian (the City) for approval. The City approved the preliminary plat. In order to accommodate the significant increase in traffic at the time of build out, the plat called for an internal collector street to intersect with Chinden Boulevard.[1]

Because Chinden Boulevard is designated as a controlled-access highway, ITD required that Lochsa Falls obtain an encroachment permit. As part of the application process, Lochsa Falls was required to submit a Transportation Impact Study (TIS). Lochsa Falls' traffic consultant recommended that a traffic signal be installed at one of the two approaches to Chinden Boulevard. During the encroachment permit application process, the location of the recommended traffic signal was modified by ITD's Chief Engineer. With the exception of the change in the location of the traffic signal, Lochsa Falls' application was approved as submitted and ITD's Chief Engineer issued a temporary encroachment permit on November 19, 2006. That permit states: "This permit **SHALL BE VOID** if all work is not completed and the Department has not made final inspection and approval within one year of the issuance date," and "Permit will be considered **Temporary** until final inspection and approval by a Department Representative." (emphasis in original).

Lochsa Falls' TIS estimated construction costs for the signal and approach at approximately $180,000. Accordingly, the encroachment permit included *inter alia* the conditions that "Developer shall design and construct a signal prior" and that "[a] Performance Bond or a Certificate of Deposit in the amount of $180,000.000, shall be provided by the developer for the signal, prior to any work being done on the highway right of way."[2]

After a subdivision receives preliminary plat approval from the City, the developer has the option of constructing the subdivision in phases. Lochsa Falls elected to construct the subdivision in twelve phases. Lochsa Falls obtained construction plan approval and final plat approval for all twelve phases from the City. After all phases of the subdivision were under construction or complete, including completion of all roadways, and all lots in the subdivision

---

[1] Lochsa Falls also has access to Ada County Highway District streets, which are not at issue in this appeal.

[2] In light of this condition contained in the November 19, 2004 encroachment permit, Lochsa Falls' assertion that Lochsa Falls "was not notified that it would be required to install and pay for a traffic signal until February 24, 2005" is somewhat puzzling. Nevertheless, the discrepant dates are not material to our analysis.

had been sold except for the 116 lots contained in Phase 12, the City informed Lochsa Falls that building permits would not be issued until Lochsa Falls complied with ITD's requirement that the signal be paid for by Lochsa Falls.

Under these circumstances, Lochsa Falls believed that it had no option but to agree to pay the cost of the installation of the signal. Thus, in March 2005, Lochsa Falls submitted to ITD's District Office a letter of credit to cover construction costs. The letter of credit was accompanied by a cover letter from Brian F. McColl, Lochsa Falls' attorney, which stated, in part, that filing the "letter of credit does not constitute a waiver of . . . Lochsa's rights to question the District's authority to require Lochsa Falls to pay for the traffic signal in question."[3] This was the first indication from Lochsa Falls to ITD that it objected to paying for the cost of the construction of the signal.

After the new road intersecting Chinden Boulevard was built and the traffic signal was installed but not operational, Lochsa Falls initiated this litigation on August 30, 2006, seeking to have ITD reimburse it for expenses it incurred in constructing the traffic signal. ITD has never accepted nor approved of any portion of the permitted work, including the traffic signal. On the other hand, ITD never formally denied the permit nor disapproved of the construction.

Lochsa Falls presented three causes of action before the district court arguing that the requirement it construct the traffic signal was: (1) a disguised and unconstitutional tax, (2) a taking without just compensation, and (3) a violation of substantive due process and equal protection of the law. In response, ITD filed a motion for summary judgment requesting that the district court dismiss Lochsa Falls' complaint without prejudice for, *inter alia*, failure to exhaust administrative remedies.

The district court dismissed Lochsa Falls' complaint without prejudice for failure to exhaust administrative remedies. The district court further found that that the fee was reasonably imposed pursuant to valid police power, was rationally related to public safety, and was not an unconstitutional tax. The district court did not address Lochsa Falls' second and third causes of action in its decision. Lochsa Falls appeals from the district court's dismissal of its complaint.

---

[3] Because Lochsa Fall's complaint was dismissed on procedural grounds, the issue of waiver was not addressed below. This issue may be considered on remand.

## II. STANDARD OF REVIEW

This appeal is from: (1) an order of summary judgment, (2) arising under the Idaho Administrative Procedures Act (APA), (3) which raises constitutional questions. This Court was recently faced with a similar situation in *American Falls Reservoir Dist. No. 2. v. Idaho Dep't of Water Resources*, 143 Idaho 862, 154 P.3d 433 (2007) wherein we explained the appropriate standard of review:

> In an appeal from an order granting summary judgment, the standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment. Upon review, the Court must liberally construe facts in the existing record in favor of the nonmoving party, and draw all reasonable inferences from the record in favor of the nonmoving party. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If there are conflicting inferences contained in the record or reasonable minds might reach different conclusions, summary judgment must be denied.
>
> The constitutionality of a statute or administrative regulation is a question of law over which this Court exercises free review. There is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. An appellate court is obligated to seek an interpretation of a statute that upholds it constitutionality. The judicial power to declare legislative action unconstitutional should be exercised only in clear cases.
>
> Where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.

*Id*. at 869, 154 P.3d at 440 (internal citations and quotation marks omitted).

## III. ANALYSIS

On appeal we are asked to consider: (1) whether the district court correctly dismissed Lochsa Falls' complaint finding that it was required to exhaust its administrative remedies prior to filing suit; (2) whether the district court correctly found that ITD and its Board had authority to require Lochsa Falls to construct the traffic signal at its own cost, and; (3) whether either party is entitled to attorney fees on appeal.

### A. Failure to exhaust administrative remedies

The primary issue in this case is whether Lochsa Falls' complaint was properly dismissed for failure to exhaust administrative remedies. "As a general rule, a party must exhaust administrative remedies before resorting to the courts to challenge the validity of administrative

4

acts." *KMST, LLC v. County of Ada*, 138 Idaho 577, 583, 67 P.3d 56, 62 (2003) (citing *Arnzen v. State*, 123 Idaho 899, 906, 854 P.2d 242, 249 (1993)). This Court has recognized two exceptions to this rule: (a) when the interests of justice so require, and (b) when the agency acted outside its authority. *Regan v. Kootenai County*, 140 Idaho 721, 725, 100 P.3d 615, 619 (2004).

The APA requires an exhaustion of the "full gamut" of administrative remedies before judicial review may be sought. I.C. § 67-5271; *Petersen v. Franklin County*, 130 Idaho 176, 185, 938 P.2d 1214, 1223 (1997) (quoting *Grever v. Idaho Tel. Co.*, 94 Idaho 900, 903, 499 P.2d 1256, 1259 (1972)); *see also Regan v. Kootenai County*, 140 Idaho at 724, 100 P.3d at 618; *Westway Constr., Inc. v. Idaho Transp. Dep't*, 139 Idaho 107, 111, 73 P.3d 721, 725 (2003). Therefore, we first consider whether the APA governs the issuance of an encroachment permit by the ITD.

### 1. The APA governs the issuance of an encroachment permit.

The APA governs if the issue at hand arose from a "contested case," which the APA defines as "[a] proceeding by an ***agency*** . . . that may result in the issuance of an ***order***." I.C. § 67-5240 (emphasis added); *Westway*, 139 Idaho at 111, 73 P.3d at 725. Since it is an executive department of the state government, the ITD is clearly an "agency" within the definition of the APA. I.C. §§ 40-501 & 67-5201(2); *Westway*, 139 Idaho at 111, 73 P.3d at 725. The APA defines an order as "an agency action of particular applicability that determines legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." I.C. § 67-5201(12); *Westway*, 139 Idaho at 111, 73 P.3d at 725.

This inquiry requires a two-step analysis: (1) Has the legislature granted the agency the authority to determine the particular issue? and (2) Does the agency decision on the issue determine "the legal rights, duties, privileges, immunities, or other legal interests" of one or more persons? *Westway*, 139 Idaho at 112; 73 P.3d at 726.

This Court must first determine whether the legislature granted ITD the authority to issue encroachment permits and specify the conditions for the granting of such permits. *Id*. This necessarily begins with a consideration of the relevant statutes.

ITD and its Board are granted the following applicable duties and powers by statute:

To "[e]stablish standards for the location, design construction, reconstruction, alteration, extension, repair and maintenance of state highways . . . ." I.C. § 40-310(5).

5

To "[d]esignate state highways, or parts of them, as controlled-access facilities and regulate, restrict or prohibit access to those highways to serve the traffic for which the facility is intended." I.C. § 40-310(9).

To "[p]roscribe rules and regulations affecting state highways . . . and enforce compliance with those rules and regulations." I.C. 40-312(1).

To "regulate or prohibit the use of any controlled-access highway by any class or kind of traffic which is found to be incompatible with the normal and safe movement of traffic." I.C. § 49-202(23).

Clearly, the legislature has empowered ITD and its Board to make rules and regulations controlling rights of access to and the safe use of state highways. Furthermore, as to traffic signals in particular, the legislature has specifically empowered ITD and its Board to:

[E]rect and maintain traffic-control devices on controlled-access highways on which any prohibitions are applicable. I.C. § 49-202(24).

Furnish, erect and maintain, whenever necessary for public safety and convenience, suitable signs, markers, signals and other devices to control, guide and warn pedestrians and vehicular traffic entering or traveling upon the state highway system. I.C. § 40-313(1).

Pursuant to its grant of authority under I.C. §§ 40-310(9), 40-311(1), 40-312(3), 40-313(2), and 49-202(19), (23) and (28), 49-221, and 67-5203, the Board of ITD promulgated the "Rules Governing Highway Right-of-Way Encroachments on State Rights-of-Way." IDAPA 39.03.42 *et seq*. These administrative rules provide that, in order "[t]o help preserve the highways as constructed and provide responsible growth where allowed, any individual, business, or other entity planning to add, modify, relocate, maintain, or remove an encroachment on the State highway . . . shall obtain a permit . . ." IDAPA 39.03.42.200.01. These rules require that any new encroachment to a controlled state highway must comply with the safety specification and standards specified by ITD and that an application may be denied if it does not. IDAPA 39.03.42.300.06; 39.03.42.300.09.

The rules lay out the costs an applicant can expect to bear. Under the rules, a permit application fee is required "based on [ITD's] cost to produce the permit and administer the program." IDAPA 39.03.42.700.01. The application fee for a major development the size and type of Lochsa Falls is $100.[3] IDAPA 39.03.42.700.02. An application for a major development

---

[3] Lochsa Falls does not challenge ITD's authority to require the $100 application fee.

like Lochsa Falls must also be accompanied by a full Transportation Impact Study (TIS) provided and paid for by the developer. IDAPA 39.03.42.301.01.a. The rules provide that:

> A TIS shall document the extent of the impact of the proposed development on the State Highway System, including additional trips, resulting level of service during AM and PM peaks, and the need for auxiliary lanes or other special capacity or safety features. Any required changes in traffic control, land use, access, pedestrian, or bicycle usage shall also be addressed.

IDAPA 39.03.42.301.01.c. ITD reviews the TIS and makes the final decision regarding any requirements. IDAPA 39.03.42.301.02.

Additionally, the rules provide that an applicant "shall pay for any changes or adjustments of highway features or fixtures brought about by actions, operations or requirements caused by the applicant" and that "[ITD] may require payment of costs associated with . . . [c]onstruction of highway modifications or improvements, including but not limited to signals. . . ." IDAPA 39.03.42.200.06; 39.03.42.700.03.e. The rules also provide that, at the discretion of ITD, the applicant may be required to secure a performance bond to guarantee completion of the work in accordance with requirements of the permit. IDAPA 39.03.42.700.03.d.

In appreciation of the specific IDAPA rules and provisions of the Idaho Code as set forth above, we conclude that the power to impose certain specific conditions upon an application for an encroachment permit, including, but not limited to, provision of bonds and construction of traffic signals, is within the scope of the legislature's grant of authority to ITD to regulate the safe use of and access to controlled access highways.

Having so concluded, we must next consider the second part of the test, that is, whether the agency decision on the issue determines "the legal rights, duties, privileges, immunities, or other legal interests" of the party. *Westway*, 139 Idaho at 112, 73 P.3d at 726. Because the ITD's denial or approval of an encroachment permit application determines the legal rights and interests of a property owner in accessing their property from a state highway, it falls within the definition of an order. Thus, judicial review of ITD's action on an encroachment permit application is governed by the APA.

**2. The applicable rules do not provide for an appeal of conditions imposed in connection with an encroachment permit.**

Typically, exhaustion of administrative remedies is a prerequisite to seeking judicial review under the APA:

7

The doctrine of exhaustion serves important policy considerations, including "providing the opportunity for mitigating or curing errors without judicial intervention, deferring to the administrative process established by the Legislature and the administrative body, and the sense of comity for the quasi-judicial functions of the administrative body." Consistent with these principles, courts infer that statutory administrative remedies implemented by the Legislature are intended to be exclusive.

*Park v. Banbury*, 143 Idaho 576, 579, 149 P.3d 851, 853-854 (2006) (quoting *Regan v. Kootenai County*, 140 Idaho at 724, 100 P.3d at 618, internal citations omitted).

The IDAPA rules provide an internal mechanism for an appeal from the denial of an encroachment permit. This internal appeals process is outlined in IDAPA 39.03.42.003. This process commences when the applicant notifies the local ITD District Traffic office of the appeal in written form within thirty days after receipt of notification of the denial. IDAPA 39.03.42.003.01. In the initial appeal process, the District office has 14 working days to review the appeal. IDAPA 39.03.42.003.03. If the District office does not overturn the initial denial, the appeal is then forwarded to the State Traffic Engineer who also has 14 working days to review the appeal. *Id.* The State Traffic Engineer is required to prepare the appeal for review by the ITD's Chief Engineer. The Chief Engineer is also granted 14 working days to review the appeal. *Id.* The appellant must then be notified within seven working days of the Chief Engineer's decision on the matter. *Id.* If the Chief Engineer affirms the denial of the application, a secondary appeals process begins. If within thirty days, the appellant then notifies ITD's legal section, the legal section will then initiate an appeal in accordance with the APA and IDAPA 04.11.01. IDAPA 39.03.42.003.04.

The Right-Of-Way Encroachment Application and Permit issued to Lochsa Falls stated that the "[p]ermit will be considered **Temporary** until final inspection and approval by a Department Representative." (emphasis in original). Although Lochsa Falls installed the traffic light, ITD never conducted a final inspection and approved the construction. Nonetheless, the application was never formally denied nor formally approved. For that reason, Lochsa Falls argues that it was not required to follow the multi-tiered internal administrative appeals process set forth in the IDAPA rules before seeking judicial review. We agree.

While "'[p]ursuit of statutory administrative remedies is a condition precedent to judicial review" under the APA, *Park*, 143 Idaho at 578, 149 P.3d at 853, failure to exhaust administrative remedies is not a bar to litigation when there are no remedies to exhaust. In

*James v. Dep't of Transp.*, 125 Idaho 892, 876 P.2d 590 (1994), this Court held that a terminated employee was not required to exhaust administrative remedies when a statute and the department's grievance procedures did not entitle him to grieve his termination. 125 Idaho at 895, 876 P.2d at 593. This Court did apply the rule requiring exhaustion of administrative remedies as to the one component of James's claim for breach of contract for which there was an administrative remedy. *Id.* The clear holding in *James* is that this Court will not bar litigation for failure to exhaust administrative remedies when no remedy is available.

Turning to the present action, the administrative rules provide a process whereby a denial of a permit application can be appealed internally within ITD. However, those rules provide no mechanism whereby an applicant, whose permit application has been *approved* subject to the imposition of additional requirements, can challenge those conditions. In the absence of an administrative remedy, we conclude that the district court erred in dismissing Lochsa Falls' complaint for failure to exhaust administrative remedies. Thus, we vacate the district court's order dismissing Lochsa Falls' complaint without prejudice for failure to exhaust administrative remedies and remand for proceedings consistent with this opinion.[4]

## B. Lochsa Falls' Constitutional Claims

Lochsa Falls presented three causes of action before the district court. The complaint stated that the requirement that Lochsa Falls construct a traffic signal was: (1) a disguised and unconstitutional tax, (2) a taking without just compensation, and (3) a violation of substantive due process and equal protection of the law. Lochsa Falls contends that the rules allowing ITD to impose conditions upon a permit application are unconstitutional on their face since ITD was palpably without jurisdiction to impose taxes or impact fees. Despite having determined that Lochsa Falls' complaint should be dismissed for failure to exhaust administrative remedies, the district court addressed Lochsa Falls' first constitutional challenge and held that the fee was reasonably imposed pursuant to valid police power, was rationally related to public safety, and was not an unconstitutional tax. The district court did not consider Lochsa Falls' second and third causes of action in its decision. Accordingly, we will address the sole constitutional

---

[4] The fact that the permit was never formally approved or denied does, however, raise questions beyond a consideration of whether Lochsa Falls failed to exhaust administrative remedies. The temporary encroachment permit issued to Lochsa Falls stated: "This permit **SHALL BE VOID** if all work is not completed and ITD has not made final inspection and approval within one year of the issuance date." (emphasis in original). We note that by operation of IDAPA 39.03.42.200 and 39.03.42.201 and the passage of time, the encroachment permit in question is void, triggering a requirement for a new permit application. IDAPA 39.03.42.201.03.

question addressed by the district court, that is, whether the requirement that Lochsa Falls construct the traffic signal was a disguised tax.

This court has held that administrative remedies must generally be exhausted before a district court has jurisdiction to decide constitutional issues. *American Falls*, 143 Idaho at 871, 154 P.3d at 442. However, because we conclude that the IDAPA rules do not provide any mechanism whereby Lochsa Falls could have internally challenged the conditions placed upon the issuance of its temporary encroachment permit, the exhaustion doctrine does not bar consideration of Lochsa Falls' constitutional challenge.

> Constitutional challenges come in two forms "facial" and "as applied":
>
> A party may challenge a statute as unconstitutional "on its face" or "as applied" to the party's conduct. *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003). A facial challenge to a statute or rule is "purely a question of law." *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). Generally, a facial challenge is mutually exclusive from an as applied challenge. *Korsen*, 138 Idaho at 712, 69 P.3d at 132. For a facial constitutional challenge to succeed, the party must demonstrate that the law is unconstitutional in all of its applications. *Id*. In other words, "the challenger must establish that no set of circumstances exists under which the [law] would be valid." *Id*. In contrast, to prove a statute is unconstitutional "as applied", the party must only show that, as applied to the defendant's conduct, the statute is unconstitutional. *Korsen*, 138 Idaho at 712, 69 P.3d at 132.

*American Falls*, 143 Idaho at 870-71, 154 P.3d at 441-442.

On appeal, Lochsa Falls asks this Court to consider whether the district court correctly found that ITD and its Board had authority to require Lochsa Falls to construct the traffic signal at its own cost. Lochsa Falls terms its constitutional challenge as "facial." Despite its attempt to style its appeal as such, the reality is that Lochsa Falls' challenge is "as applied." Lochsa Falls has not demonstrated that, under no set of circumstances, the encroachment permit application rules and process could be constitutionally valid. Rather, Lochsa Falls is specifically challenging that the rules are unconstitutional *as applied to it.* The IDAPA rules provide that the Department *may* require payment of the costs associated with "[c]onstruction of highway modifications or improvements, including but not limited to signals. . . ." IDAPA 39.03.42.700.03.e (emphasis added).

As was discussed above, ITD is statutorily imbued with the police power to regulate the safe use of and access to state highways. Certainly, Lochsa Falls had no right of access to Chinden Boulevard; rather, any access is in the nature of a privilege extended by ITD. Entities

such as state agencies and municipalities that are statutorily empowered to carry out police powers, such as ITD, have the discretion to impose regulatory fees in accomplishing their directives. *Brewster v. City of Pocatello*, 115 Idaho 502, 504-05, 768 P.2d 765, 767-68 (1988). However, this authority does not impart the ability to tax. *Id.* We have previously distinguished between taxes and fees by noting that fees are for the purpose of regulation whereas taxes are solely for purposes of raising revenue. *Id.*

The costs that Lochsa Falls incurred in the instant case were only those costs that Lochsa Falls itself proposed were necessary to safely connect its development to Chinden Boulevard, and which were outlined in the TIS that Lochsa Falls prepared and submitted to ITD. Moreover, ITD received only the $100 application fee Lochsa Falls was required to pay. Therefore, we conclude the fees that Lochsa Falls complains of were for the purpose of regulating the safe use of and access to state highways at its development and were not a tax solely for the purpose of raising revenue.

However, even fees imposed as regulations under police powers must meet a test of reasonableness and be rationally related to the cost of enforcing the regulations at hand. *BHA Investments, Inc. v. State*, 138 Idaho 348, 353, 63 P.3d 474, 479 (2003). Whether such a requirement is reasonable or rationally related to the impact of a particular development on the safety of the travelling public requires a case-by-case analysis. As the district court stated in its memorandum decision, it did not consider the entirety of Lochsa Falls' complaints and factual allegations when it dismissed the complaint solely on procedural grounds:

> Although Plaintiff raises constitutional challenges before this Court, Plaintiff also acknowledged at oral argument that Plaintiff has other complaints regarding the permit fee imposed by the ITD. Among those being that Lochsa Falls should not be required to bear the cost for a traffic signal that is benefiting other developers in the immediate area. This argument, along with Plaintiff's other complaints should be channeled through the administrative appeals process prior to seeking any form of relief in this Court.

Although we conclude that, generally speaking, it is not an impermissible tax for the ITD to impose the condition of erecting a traffic signal as a requirement for a developer seeking to be granted an encroachment permit to a controlled access highway, we express no opinion as to whether the imposition of the condition was reasonable in light of Lochsa Falls' individual application. The determination of reasonableness must be made by the district court on remand.

11

Because the district court did not consider Lochsa Falls' second and third causes of actions on takings and due process/equal protection, respectively, we do not address those issues for the first time on appeal and reserve them for the district court's consideration on remand with the benefit of the parties' opportunity to further present their arguments and develop the factual record.

**C. Attorney Fees and Costs on Appeal**

Both parties request attorney fees and costs on appeal pursuant to I.C. § 12-117. That statute provides in part:

> Unless otherwise provided by statute, in any administrative . . . proceeding involving as adverse parties a state agency . . . and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

We decline to award fees to either party. Because we vacate the district court's order granting ITD summary judgment and dismissing Lochsa Falls' complaint it cannot be said that ITD is the prevailing party. Thus, ITD is not entitled to fees of costs. Although Lochsa Falls is the prevailing party on appeal, we cannot find that ITD acted without a reasonable basis in fact or law. Parties are typically required to exhaust administrative remedies before pursuing judicial review in actions under the APA, as would be the case here if it were not for a procedural void in the IDAPA rules pertaining to conditions imposed in connection with encroachment permit applications.

## IV. CONCLUSION

We vacate the district court's judgment dismissing Lochsa Falls' complaint without prejudice for failure to exhaust administrative remedies. We remand this matter to the district court for proceedings consistent with this opinion. Costs to appellant.

Chief Justice EISMANN, Justice BURDICK and Justice Pro Tem TROUT **CONCUR**.

J. JONES, J., concurring in part and dissenting in part.

I concur in the Court's opinion, except that I would award attorney fees to ITD. In my estimation, Lochsa Falls' claims contain little substance. While the Court was technically correct in remanding the constitutional claims (only because the district court did not consider them), they appear to have less merit than the issues that were decided by this Court. Lochsa Falls did brief and argue its takings claim but failed to put forth a convincing argument that a

12

compensable taking had occurred. This Justice was left with the abiding feeling that Lochsa Falls benefitted much more than the State from the transaction at issue.

While Lochsa Falls portrays itself as having been put upon by being required to signalize an intersection for the benefit of the State and the motoring public, the reality is otherwise. The salient facts are that Lochsa Falls wished to develop a parcel of property located along a limited access highway, its traffic consultant recommended and it requested a signalized intersection to provide subdivision access to and from the highway, it was advised it could have the signalized intersection if it would pay for the same, it raised no protest to this routine requirement, and having gotten the benefit it sought Lochsa Falls now wishes to have ITD foot the bill.

This case could appropriately be analyzed in a contractual context. Lochsa Falls requests that ITD grant it the right to have a signalized intersection to benefit its subdivision. ITD agrees, provided that Lochsa Falls pays for signalizing the intersection. Lochsa Falls accepts the proposal without protest and proceeds to perform the signalizing work. Upon completion of the work, Lochsa Falls unilaterally changes its mind and decides it needs to be paid for the signalizing, but expresses no intention of giving up the valuable benefit it has derived from the deal. Lochsa Falls got what it bargained for but does not wish to honor its undertaking to bear the cost of such benefit. Had Lochsa Falls objected to the requirement that it pay for signalizing the intersection, it could simply have said "thanks, but no thanks" and done without a signal. One suspects there is not the slightest chance it would have done so, as the increase in the value of its lots would substantially outweigh the cost of the traffic signal.

Lochsa Falls portrays the signalized intersection as an improvement to the highway, benefitting the traveling public. In its brief, Lochsa Falls asserts "had [the Legislature] wanted developers to pay for the costs to improve highways," it could have granted ITD the power to assess impact fees. Lochsa Falls continues, stating that ITD "has decided that developers should pay for the privilege of having a state highway with a traffic signal abut their property, while the other traveling public who pass through and benefit from the signal and state highway do not have to pay for the traffic signal." From ITD's standpoint, adding additional traffic signals to a well-used limited access highway does not necessarily improve the highway system but, rather, may slow the passage of traffic along that highway system. As ITD notes in its brief, "[n]either ITD nor the state highway system receive any benefit from the new intersection. The capacity of the US highway did not increase, nor are there any improvements to the state highway." Neither

is the traveling public benefitted by an additional stoplight, as the traveling public would likely prefer not to have to stop for the signal or to deal with the additional traffic coming onto the highway.

Lochsa Falls did correctly state that it is a "privilege" for a developer to have its property abutted by a state highway with a traffic signal. The fact is that a signalized intersection is a great benefit to the abutting property, substantially increasing its value. More signalized intersections are requested than are granted. Lochsa Falls should be pleased that it was able to obtain one for the benefit of its property and its prospective lot buyers. It essentially obtained a franchise to stop the flow of traffic to allow its lot buyers to have access to and from the highway. Rather than being heavily burdened, it has been highly benefitted. And, the benefit becomes a vested property interest. As ITD points out in its brief, "[w]hen a permittee completes the requirements for an encroachment permit, then under the ITD rule, it receives a deeded right of access." *See*, IDAPA 39.03.42.300.04. In other words, when the traffic signal and new intersection are accepted by ITD and the permitting process has been completed, Lochsa Falls will get a deeded property right to the access.

Because Lochsa Falls has brought and appealed claims without a reasonable basis in fact or law, I would award ITD attorney fees under Idaho Code § 12-117.