## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 45396

| | |
|---|---|
| GEORGE Q. RICKS, | ) |
| | ) Filed: December 3, 2018 |
| Plaintiff-Appellant, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) |
| STATE OF IDAHO CONTRACTORS | ) |
| BOARD, IDAHO BOARD OF | ) |
| OCCUPATIONAL LICENSES, | ) |
| LAWRENCE G. WASDEN, ATTORNEY | ) |
| GENERAL, | ) |
| | ) |
| Defendants-Respondents. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment, affirmed.

George Q. Ricks, Rathdrum, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Leslie M. Hayes, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

George Q. Ricks appeals from the district court's judgment dismissing his complaint. He argues the district court erred in dismissing his claims as a matter of law. The district court's judgment is affirmed.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

As alleged in Ricks' complaint, in 2014, Ricks filed an application for individual contractor registration with the Idaho Bureau of Occupational Licenses (IBOL). The application required Ricks to provide various pieces of information, including his social security number. Ricks did not provide his social security number on his application because of his religious belief

1

that social security numbers are "a form of the mark, and in substance (essence) the number of the 2-horned beast written of in the Holy Bible." A few days after Ricks filed his application, IBOL requested his social security number in order to process his application. Instead of providing his social security number, Ricks sent IBOL an affidavit describing his religious objection. A month later, Ricks received notice from IBOL that his application for contractor registration was denied because he failed to provide his social security number.

It is not clear what actions Ricks took after his application was denied because the record on appeal does not contain any documents that detail the extent, if any, of administrative review Ricks initiated after his application was denied. However, Ricks' complaint and appellate brief allege he filed a petition for review, received a "Certificate of Agency Record on Appeal," and an attorney for the State of Idaho Contractor's Board (ICB) filed a motion to dismiss Ricks' petition. None of these documents are included in the appellate record. Almost two years after this alleged administrative action, Ricks filed a complaint with the district court listing ICB, IBOL, and Lawrence Wasden, the Idaho Attorney General, as defendants. Because Ricks failed to sign the complaint, he filed an amended complaint with his signature. The amended complaint claimed that 42 United States Code § 666(a)(13), Idaho Code § 73-122, and I.C. § 54-5210 violated: his right to contract; his right to the free exercise of his religion under the Idaho Constitution, Article 1, Section 4; his statutory religious freedom rights granted by the federal Religious Freedom Restoration Act (RFRA) and Idaho's Free Exercise of Religion Protected Act (FERPA); his right to equal protection; a violation of the Privacy Act of 1974; and a violation of separation of powers. The complaint also contained a claim that I.C. § 54-5210, the statute requiring contractors to provide their social security numbers on license applications is unconstitutionally vague and, therefore, is void.

The State filed a motion to dismiss the amended complaint under Idaho Rule of Civil Procedure 12(b)(6), arguing that 42 U.S.C. § 666(a)(13), the federal statute that offers a grant to states that collect professional licensees' social security numbers in order to more effectively enforce child support orders, preempted Ricks' religious objection under Idaho law. The district court granted the State's motion[1] and dismissed Ricks' free exercise claim under the Idaho

---

[1] Neither a transcript of the hearing nor the order granting the State's motion to dismiss are contained in the record.

Constitution and his claim under FERPA.[2]  The State then filed a second motion to dismiss[3] arguing Ricks had no fundamental right to contract, his equal protection was not violated, the Privacy Act of 1974 was not violated, separation of powers was not violated, and that I.C. § 54-5210 was not void for vagueness.  Before the district court ruled on the State's second motion to dismiss, the district court permitted Ricks to file a second amended complaint, which added a free exercise claim under the First Amendment to the United States Constitution.  The State then filed a third motion to dismiss arguing Ricks' First Amendment rights were not violated.  At a hearing on the second and third motions to dismiss, the district court asked the State to provide briefing on whether Ricks' RFRA claim should also be dismissed.  At the next hearing on the motions to dismiss, the district court declined to dismiss Ricks' RFRA claim.  Almost a month later, the district court issued a written order dismissing Ricks' First Amendment claim.  The State then filed a fourth motion to dismiss Ricks' RFRA claim, together with a motion for reconsideration.[4]  Ricks appealed the district court's written order.  After the district court granted the State's motion for reconsideration,[5] the district court entered judgment and dismissed the remaining RFRA claim.

## II.

## STANDARD OF REVIEW

As an appellate court, we will affirm a trial court's grant of an I.R.C.P. 12(b)(6) motion where the record demonstrates that there are no genuine issues of material fact and the case can be decided as a matter of law.  *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 398, 987 P.2d 300, 310 (1999).  When reviewing an order of the district court dismissing a case pursuant to Rule 12(b)(6), the nonmoving party is entitled to have all inferences from the record and

[2]  It is unclear from the record whether the district court dismissed other claims from Ricks' complaint during this hearing or in the district court's related order, specifically Ricks' right to contract, Privacy Act of 1974, separation of powers, Idaho Code § 54-5210 is void for vagueness, and equal protection claims.  If these claims were not dismissed at this point in the proceedings, they were likely dismissed in the district court's third memorandum decision and order granting the defendants' motion to reconsider, as shown below.  In any event, the district court's judgment definitively dismissed all Ricks' claims by dismissing his entire complaint.

[3]  The State's second motion to dismiss is not in the record.

[4]  The State's fourth motion to dismiss and motion for reconsideration is not in the record.

[5]  The order granting the State's motion to reconsider the district court's written order is not in the record.

3

pleadings viewed in its favor, and only then may the question be asked whether a claim for relief has been stated. *Coghlan*, 133 Idaho at 398, 987 P.2d at 310. The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995).

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cnty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011).

## III.

## ANALYSIS

Ricks argues the district court erred by granting the State's motions to dismiss. Ricks argues the merits of several of the claims made in his complaint, namely: (1) 42 U.S.C. § 666(a)(13), I.C. § 73-122, and I.C. § 54-5210 violate Ricks' free exercise of religion as protected by FERPA, RFRA, and the United States and Idaho Constitutions; and (2) the statutes also violate Ricks' inalienable right to contract granted by the United States and Idaho

4

Constitutions and amount to a violation of due process and an illegitimate exercise of state and federal police power.[6]

Before reaching these arguments, we address the matter of administrative exhaustion. Although neither party raised the issue of administrative exhaustion on appeal, this Court may raise it sua sponte. "[T]he exhaustion doctrine implicates subject matter jurisdiction because a district court does not acquire subject matter jurisdiction until all the administrative remedies have been exhausted." *Fuchs v. State, Dep't of Idaho State Police, Bureau of Alcohol Beverage Control*, 152 Idaho 626, 629, 272 P.3d 1257, 1260 (2012) (quotations omitted).

"As a general rule, a party must exhaust administrative remedies before resorting to the courts to challenge the validity of administrative acts." *Lochsa Falls, L.L.C. v. State*, 147 Idaho 232, 237, 207 P.3d 963, 968 (2009) (quotations omitted). Parties are subject to the administrative remedies set out in the Idaho Administrative Procedures Act (IDAPA) if "the issue at hand arose from a 'contested case.'" *Lochsa Falls*, 147 Idaho at 237, 207 P.3d at 968 (quoting I.C. § 67-5240). The Idaho Supreme Court has recognized two exceptions to this exhaustion requirement: "(a) when the interests of justice so require, and (b) when the agency acted outside its authority." *Lochsa Falls*, 147 Idaho at 237, 207 P.3d at 968. Additionally, "failure to exhaust administrative remedies is not a bar to litigation when there are no remedies to exhaust." *Id.* at 239-40, 207 P.3d at 970-71. *See also* I.C. § 67-5271(2).

The issues Ricks brings before this Court are subject to IDAPA's administrative exhaustion requirement. Idaho Code § 54-5210(3) specifically notes that "an application for registration that has been denied by the board shall be considered a contested case as provided for in [IDAPA] and shall be subject to the provisions of [IDAPA] as well as the administrative rules adopted by the board governing contested cases." Thus, under IDAPA, Ricks was required to seek relief through an administrative hearing. I.C. §§ 67-5240-5255. Only after receiving a final order from IBOL, does IDAPA permit Ricks to file a petition for judicial review with the district court, which must be done within twenty-eight days of the issuance of the final order. I.C. §§ 67-5270-5279.

---

[6] Although the State argues against perceived equal protection violations and unconstitutionality in its brief, likely because these arguments were raised below, the Court does not interpret Ricks' brief to contain such arguments. Thus, the Court does not address them here.

Ricks does not argue that any of the exceptions to this exhaustion requirement apply to his case, thus we decline to consider any exceptions. It appears that Ricks sought some measure of administrative review of IBOL's decision denying his contractor's license application, although the record does not demonstrate what, if any, administrative review occurred. Thus, it is unclear whether Ricks has shown that he exhausted all administrative remedies available to him prior to seeking judicial review.

This subject matter bar applies not only to the review of IBOL's denial of Ricks' contractor's license application, but also to the review of his claims that the denial violates his constitutional rights under the United States and Idaho Constitutions. Even constitutional issues arising from an administrative action must "be exhausted before a district court has jurisdiction to decide constitutional issues," unless an exception to exhaustion applies.[7] *Lochsa Falls*, 147 Idaho at 240, 207 P.3d at 971. It is unclear if Ricks exhausted the appropriate administrative procedures; failure to do so would deprive this Court of subject matter jurisdiction. To the extent this Court has jurisdiction, Ricks' claim fails on the merits.

## A.    Statutes at Issue

We begin our analysis with a description of the statutes at issue in this case. Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996. The Act, a cooperative endeavor with the states,[8] aimed, among other things, to improve child support enforcement effectiveness by collecting information from the states for the Federal Parent Locator Service, a database established to track down parents with child support obligations. *See Lewis v. State, Dep't of Transp.*, 143 Idaho 418, 422-23, 146 P.3d 684, 688-89 (Ct. App. 2006). As an exercise of Congress's spending authority, the Act offered grants to states in exchange for compliance with the Act. One requirement of the Act is that states collect the social security number of any applicant for a professional license. 42 U.S.C. § 666(a)(13).

---

[7]    We note another exception to the administrative exhaustion rule: "where an agency is charged with implementing a statute, declaratory judgment in the district court is permissible to determine the applicability of agency rules. I.C. § 67-5278. This is so regardless of the availability of agency remedies." *Doe v. State*, 158 Idaho 778, 782, 352 P.3d 500, 504 (2015). Because Ricks did not seek a declaratory judgment in the district court, this exception does not apply here.

[8]    *See Idaho Dep't of Health & Welfare v. McCormick*, 153 Idaho 468, 471, 283 P.3d 785, 788 (2012) (detailing the system by which states enact legislation and rules in compliance with a federal statute in order to accept federal grant money).

6

The Idaho Legislature chose to participate in the cooperative endeavor in 1998 by passing I.C. § 73-122 to bring Idaho into compliance with 42 U.S.C. § 666(a)(13), although Idaho already requested social security numbers on professional license applications. H.B. 431, 54th Leg., 2nd Reg. Sess. (Idaho 1998) (Statement of Purpose/Fiscal Note). Idaho Code § 73-122 states:

> (1) The social security number of an applicant shall be recorded on any application for a professional, occupational or recreational license.
> (2) The requirement that an applicant provide a social security number shall apply only to applicants who have been assigned a social security number.
> (3) An applicant who has not been assigned a social security number shall:
> (a) Present written verification from the social security administration that the applicant has not been assigned a social security number; and
> (b) Submit a birth certificate, passport or other documentary evidence issued by an entity other than a state or the United States; and
> (c) Submit such proof as the department may require that the applicant is lawfully present in the United States.

In 2005, the Idaho Legislature passed the Idaho Contractor Registration Act because "[t]he state of Idaho has no way of stopping unscrupulous or dishonest building contractors from continuing to practice in this state. There is nothing in current law that would prohibit a contractor--even if known to be a 'bad actor'--from acting as a building contractor." H.B. 163, 58th Leg., 1st Reg. Sess. (Idaho 2005) (Statement of Purpose). One section of the Act requires "[a]n applicant for registration as a contractor [to] submit an application under oath upon a form to be prescribed by the board and which shall include the following information pertaining to the applicant: . . . Social security number." I.C. § 54-5210. ICB and IBOL administer both I.C. § 54-5210 and I.C. § 73-122 by requiring social security numbers to be listed on a contractor's application for licensure. I.C. § 54-5207.

## B. Ricks' Free Exercise Rights

Ricks' argument that requiring him to provide his social security number on his contractor's license application amounts to a violation of his free exercise of religion is based in four separate sources of law: the First Amendment to the United States Constitution; Article 1, Section 4 of the Idaho Constitution; RFRA; and FERPA. Each operates independently of one another. We address each of these in turn below.

7

**1.    The federal RFRA preempts any claims Ricks may have under Idaho's FERPA**

Ricks argues that this Court should proceed to the merits of his FERPA argument and consider FERPA's multi-part test, despite the State's argument that FERPA, in its entirety, is preempted by 42 U.S.C. § 666(a)(13). We first address the State's preemption argument.

In 2000, in reaction to the United States Supreme Court's decision in *City of Boerne v. Flores*, which held Congress had exceeded its authority by extending RFRA to the states, 521 U.S. 507, 536 (1997), the Idaho Legislature passed its own version of RFRA--FERPA--to maintain statutory religious liberty protections for Idaho citizens,  I.C. §§ 73-401-404.  FERPA applies to all state laws and local ordinances unless a state law or local ordinance explicitly states otherwise. I.C. § 73-403. FERPA provides a wider scope of protection for religious liberty than RFRA, "adopting a much broader definition of 'substantially burdens,'" as well as codifying the phrase "exercise of religion" to mean "the ability to act or refusal to act in a manner substantially motivated by a religious belief, whether or not the exercise is compulsory or central to a larger system of religious belief." *State v. White*, 152 Idaho 361, 364 n.2, 364, 271 P.3d 1217, 1220 n.2, 1220 (Ct. App. 2011). FERPA states that "'Substantially burden' means to inhibit or curtail religiously motivated practices," I.C. § 73-401, and that "the term 'substantially burden' is intended solely to ensure that [FERPA] is not triggered by trivial, technical or de minimis infractions," I.C. § 73-402(5). Otherwise, FERPA's operative provisions are virtually identical to RFRA:

> (2) Except as provided in subsection (3) of this section, government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.
> (3) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is both:
>     (a) Essential to further a compelling governmental interest;
>     (b) The least restrictive means of furthering that compelling governmental interest.

I.C. § 73-402.

In *Lewis*, this Court reviewed a similar FERPA claim. Lewis attempted to renew his driver's license, but refused to provide his social security number on the renewal application because he considered the number to be "the precursor to, or actually is, the biblical 'mark of the beast.'" *Lewis*, 143 Idaho at 420, 146 P.3d at 686. After the Idaho Department of Transportation suspended the applicant's license, denied his renewal application, and upheld those actions upon

8

administrative review, the applicant appealed to the district court. *Id.* Lewis argued, among other things, that under FERPA he should receive an exemption from I.C. § 49-306, the statute requiring him to provide his social security number on his renewal application. *Lewis*, 143 Idaho at 422, 146 P.3d at 688. Like I.C. § 73-122, I.C. § 49-306 was enacted to comply with 42 U.S.C. § 666(a)(13). *Lewis*, 143 Idaho at 423, 146 P.3d at 689; H.B. 431, 54th Leg., 2nd Reg. Sess. (Idaho 1998) (Statement of Purpose).

This Court did not reach the merits of the applicant's FERPA argument, instead holding FERPA was preempted by 42 U.S.C. § 666(a)(13). *Lewis*, 143 Idaho at 423, 146 P.3d at 689. The Court explained that giving the applicant a religious exemption from I.C. § 49-306 through FERPA would cause FERPA to conflict with 42 U.S.C. § 666(a)(13) because 42 U.S.C. § 666(a)(13) requires uniform compliance. *Lewis*, 143 Idaho at 423, 146 P.3d at 689. In other words, FERPA would cause the Idaho statute to operate with exceptions while the federal statute required the Idaho statute to operate without exceptions. The Court reasoned that this conflict must be resolved by the Supremacy Clause of the United States Constitution, which dictates that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." *Lewis*, 143 Idaho at 422, 146 P.3d at 688 (quoting U.S. CONST. art. VI, cl. 2). Thus, in order to ensure I.C. § 49-306 did not conflict with 42 U.S.C. § 666(a)(13), the Court did not apply FERPA to I.C. § 49-306 and declined to address the merits of the applicant's FERPA argument. *Lewis*, 143 Idaho at 425, 146 P.3d at 691.

*Lewis* bears obvious resemblance with Ricks' case. The only relevant difference between the two is the type of license at issue. However, because the *Lewis* Court did not identify why FERPA was directly contrary to 42 U.S.C. § 666(a)(13), this Court proceeds to clarify the preemption analysis employed in *Lewis*.

"In determining whether state law is preempted, we begin with a presumption of no preemption." *Idaho Dept. of Health & Welfare v. McCormick*, 153 Idaho 468, 471, 283 P.3d 785, 788 (2012). Federal law may preempt state law in two ways: (1) field preemption, where Congress has exhibited an intent to occupy a given field of law; and (2) conflicting laws, where Congress has not occupied a given field of law, but a state law conflicts with a federal law. *Lewis*, 143 Idaho at 422, 146 P.3d at 688. In the case of field preemption, any law a state passes in a federally-occupied area of law is preempted in its entirety. *Id.* For conflicting laws, a state

9

law is preempted only to the extent it conflicts with federal law. *Id.*; *McCormick*, 153 Idaho at 471, 283 P.3d at 788.

Here, it cannot be said that Congress has occupied the field of child support enforcement, especially since 42 U.S.C. § 666(a)(13) invites states to engage in a cooperative endeavor with the federal government in this area. *See McCormick*, 153 Idaho at 471, 283 P.3d at 788 ("The cooperative nature of the Medicaid program shows that Congress did not intend to occupy the entire Medicaid field, as the federal Medicaid statute calls for participating states to adopt their own legislation and regulations."). Thus, the Court must examine FERPA to see if it conflicts with 42 U.S.C. § 666(a)(13).[9] In order to determine whether a state law conflicts with a federal law:

> this Court must determine that the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Essentially, this Court must find that a state law is directly contrary to the congressional intent behind a federal statute before state law will be preempted.

*McCormick*, 153 Idaho at 471, 283 P.3d at 788 (quoting *Christian v. Mason*, 148 Idaho 149, 152, 219 P.3d 473, 476 (2009)). In doing so, the Court interprets 42 U.S.C. § 666(a)(13) in light of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996's overall purpose and follow well-established guidance concerning statutory interpretation:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*McCormick*, 153 Idaho at 472, 283 P.3d at 789 (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)).

---

[9] We clarify that we are not examining whether Idaho Code § 73-122 or I.C. § 54-5210 conflict with 42 U.S.C. § 666(a)(13). Indeed, both those statutes advance the directive of 42 U.S.C. § 666(a)(13) in collecting social security numbers on professional license applications. Rather, the question here is whether FERPA, as an Idaho statute that grants exemptions from other Idaho statutes, conflicts with 42 U.S.C. § 666(a)(13) by granting an exemption from its Idaho counterparts, I.C. § 73-122 or I.C. § 54-5210.

We first turn to the literal language of 42 U.S.C. § 666(a)(13). That provision states that "each State must have in effect laws requiring the use of the following procedures," including "[p]rocedures requiring that the social security number of . . . any applicant for a professional license, . . . occupational license . . . ." 42 U.S.C. § 666(a)(13). Additionally, 42 U.S.C. § 666(a)(13) provides that "if a State allows the use of a number other than the social security number to be used on the face of the document while the social security number is kept on file at the agency, the State shall so advise any applicants." This Court has interpreted this provision to mean that:

> at the state's discretion, the applicant's social security number need not be recorded on the licensing document, but still must be recorded in a department file. The provision does not affect the requirement of recording the applicant's social security number on the application or indicate the applicant cannot be required to provide the number to the department.

*Lewis*, 143 Idaho at 423 n.4, 146 P.3d at 689 n.4.

The plain text of FERPA, I.C. §73-402, does not directly conflict with the plain text of 42 U.S.C. § 666(a)(13). FERPA's text does not impose any conflicting duties or prohibitions concerning professional licensure or the reporting of social security numbers. Thus, we turn to the purposes and objectives of the two statutes and the intent of the legislative bodies behind them.

Ultimately, Congress passed 42 U.S.C. § 666(a)(13):

> For the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children . . . for whom such assistance is requested.

42 U.S.C. § 651; *see also* 42 U.S.C. § 654(20) (a state "shall have in effect all of the laws to improve child support enforcement effectiveness"). This statement of purpose responds to Congress's finding that in "1992, only 54 percent of single-parent families with children had a child support order established and, of that 54 percent, only about one-half received the full amount due. Of the cases enforced through the public child support enforcement system, only 18 percent of the caseload has a collection." H.R. 3734, 104th Cong. § 101(4) (1996).

Concerning FERPA, the Idaho Legislature set forth its rationale for adopting the statute in 2000:

11

The purpose of this legislation is to reestablish a test which courts must use to determine whether a person's religious belief should be accommodated when a government action or regulation restricts his or her religious practice. The test, known as the "compelling interest test," requires the government to prove with evidence that its regulation is (1) essential to achieve a compelling governmental interest and (2) it is the least restrictive means of achieving the government's compelling interest.

Prior to 1990 the U.S. Supreme Court used the above test--the "compelling test"--when deciding religious claims. However, in a 1990 decision (*Employment Div. of Oregon v. Smith* [494 U.S. 872 (1990)]) the Court tipped the scales of justice in favor of government regulation by throwing out the compelling interest test, which had shielded our religious freedom from onerous government regulation for more than 30 years. The *Smith* decision reduced the standard of review in religious freedom cases to a "reasonableness standard." While all other fundamental rights (freedom of speech, press, assembly, etc.) remain protected by the stringent "compelling interest test," the Court singled out religious freedom by reducing its protection to the weak "reasonableness test."

A widely recognized principle of law is that states are free to protect an individual's right with a much higher standard than the U.S. Constitution itself affords. Thus, in light of this principle in conjunction with the [*City of Boerne*, 521 U.S. 507] decision, states are free to enact their own RFRA's thereby choosing to apply the higher "compelling interest test" standard in their own religious freedoms cases.

S.B. 1394, 55th Leg., 2nd Reg. Sess. (Idaho 2000) (Statement of Purpose).

The stated purposes and objectives behind 42 U.S.C. § 666(a)(13) and FERPA do not necessarily present a direct conflict. However, the operation of FERPA, in the context of the cooperative endeavor between Congress and the Idaho Legislature, does impede 42 U.S.C. § 666(a)(13)'s objective of improving child support enforcement effectiveness by exempting individuals from I.C. § 73-122's and I.C. § 54-5210's requirement of providing social security numbers on professional license applications. In other words, an exemption granted by FERPA would make it more difficult to locate a parent who may have outstanding child support obligations through the Federal Parent Locator Service database. Because this amounts to a direct conflict with Congress's intent in passing 42 U.S.C. § 666(a)(13), 42 U.S.C. § 666(a)(13) preempts FERPA in this context. Thus, the district court did not err in dismissing Ricks' FERPA claim.[10]

---

[10] Even if the Court were to address the merits of Ricks' FERPA claim, it would fail. The parties do not contest that Ricks' refusal to provide his social security number on his contractor's license application is motivated by a sincerely-held religious belief. But whether the conditioning of government benefits, like licensure, upon the provision of a social security

12

## 2. RFRA is inapplicable to this case because Ricks does not list any federal defendants

In response to the standard for interpreting the First Amendment announced by the United States Supreme Court in *Smith*, Congress passed RFRA, essentially restoring and codifying the Court's First Amendment jurisprudence predating *Smith*. 42 U.S.C. § 2000bb. RFRA applies to all federal law unless a federal law explicitly states otherwise. 42 U.S.C. § 2000bb-3 (declared unconstitutional as applied to the states in *City of Boerne*, 521 U.S. 507).

It provides individuals with a claim or defense that they should be exempt from federal laws that burden their exercise of religion. However, such exemptions are only granted if courts determine the individuals pass RFRA's multi-part test:

---

number is a substantial burden upon the free exercise of religion is a question on which other courts have split. *See Leahy v. D.C.*, 833 F.2d 1046, 1048 (D.C. Cir. 1987) (assuming a requirement that a social security number be obtained and disclosed in order to receive a driver's license is a substantial burden for a "mark of the beast" believer); *Callahan v. Woods*, 736 F.2d 1269, 1273 (9th Cir. 1984) (holding a requirement that a social security number be obtained and disclosed in order to receive welfare is a substantial burden for a "mark of the beast" believer); *In re Turner*, 193 B.R. 548, 555 (Bankr. N.D. Cal. 1996) (holding a requirement that a bankruptcy petition preparer provide his social security number on others' bankruptcy petitions was not a substantial burden for a "mark of the beast" believer). *See also Thomas v. Review Bd.*, 450 U.S. 707, 717-18 (1981) ("Where the State conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief . . . a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial."); *Callahan*, 736 F.2d at 1273 (same); *Miller v. Comm'r*, 114 T.C. 511, 516 (2000) (compiling substantial burden cases). However, even assuming without deciding that denying Ricks' application for a contractor's license substantially burdens his religious exercise, Ricks' FERPA claim fails because I.C. § 73-122 and I.C. § 54-5210 are supported by compelling government interests (to conform to 42 U.S.C. § 666(a)(13) to improve child support enforcement effectiveness and to ensure the quality of contractors in Idaho), and requiring a social security number on Ricks' license application is the least restrictive means of accomplishing those interests. Indeed, it is hard to imagine another uniformly used method of identification other than a social security number that is consistent across state lines; does not change when an individual obtains a new housing arrangement, a new name, or new employment; and is possessed by all individuals that could be used to locate Ricks in the event he has outstanding child support obligations. Thus, assuming for purposes of argument that Ricks' religious exercise is substantially burdened by the social security number requirement, the requirement does not violate his statutory free exercise rights under FERPA.

13

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

In order to assert a RFRA claim or defense, an individual's lawsuit must include federal government defendants, defined under the statute to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb-2. Here, Ricks' complaint does not list any federal government defendant charged with administering 42 U.S.C. § 666(a)(13). As such, he cannot validly raise a RFRA claim, and the district court did not err in dismissing the claim.

### 3. Ricks' First Amendment rights are not violated by requiring him to list his social security number on a building contractor application

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. Generally applicable and neutral laws that incidentally burden the exercise of an individual's religion do not offend the First Amendment. *See Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872 (1990), *superseded by statute*, Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488, *as recognized in Holt v. Hobbs*, ___ U.S. ___, 135 S. Ct. 853 (2015).[11] Thus, generally applicable and neutral laws

---

[11] Westlaw flags *Employment Div. of Oregon v. Smith*, 494 U.S. 872 (1990), as superseded by statute, but that designation does not reflect *Smith*'s continuing validity as controlling law. Westlaw points a reader of *Smith* to the United States Supreme Court's decision in *Holt v. Hobbs*, ___ U.S. ___, 135 S. Ct. 853 (2015). The Court in *Holt* explains that *Smith* repudiated previous Free Exercise Clause analysis under the First Amendment to the United States Constitution, but that Congress's response to *Smith* was to pass RFRA, a statute protecting religious exercise by employing the Free Exercise Clause analysis the Court had just repudiated. *Holt*, ___ U.S. at ___, 135 S. Ct. at 859-60. Congress's passage of RFRA thus added another federal avenue of relief for parties whose free exercise of religion has been burdened. Parties may elect to seek relief through either: (1) the First Amendment, which does not protect against incidental burdens incurred by generally applicable and neutral laws as set forth in *Smith*; and

burdening the free exercise of religion face only rational basis review. *Id.*; *see also Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999). However, laws that selectively target religious exercise merit strict scrutiny review and will only survive scrutiny in rare cases. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

Here, Ricks has presented no evidence that 42 U.S.C. § 666(a)(13), I.C. § 73-122, or I.C. § 54-5210 are not generally applicable or neutral laws or that they were passed with the object to target his religious exercise. Section 666(a)(13)'s requirement of providing a social security number on all professional license applications is generally applicable to all professionals within states that have voluntarily assumed 42 U.S.C. § 666(a)(13)'s statutory obligations. The statute does not single out a class of religious people who, as an element of the exercise of their religion, object to the use of a social security number. Additionally, 42 U.S.C. § 666(a)(13)'s purpose--to improve child support enforcement effectiveness--is religiously neutral. The same can be said for I.C. § 73-122 and I.C. § 54-5210. Both statutes apply generally to require all professionals, including contractors, to list their social security numbers on license applications. Neither single out a class of religious objectors. Rather, the purposes of I.C. § 73-122 (to conform to 42 U.S.C. § 666(a)(13) and improve child support enforcement effectiveness) and I.C. § 54-5210 (to ensure the quality of contractors in Idaho) are religiously neutral. As such, we evaluate all three statutes under rational basis review. We conclude the purposes behind these statutes show Congress and the Idaho Legislature possessed rational bases in their enactment. Thus, even if the statutes burden the free exercise of Ricks' religion, that burden does not amount to a violation of Ricks' First Amendment rights. Therefore, the district court did not err in dismissing this claim.

    **4.**      **Article I, Section 4 of the Idaho Constitution is not violated by the incidental burden of using a social security number on a building contractor application**

Article 1, Section 4 of the Idaho Constitution provides similar protections to the First Amendment of the United States Constitution. It reads:

> The exercise and enjoyment of religious faith and worship shall forever be guaranteed; and no person shall be denied any civil or political right, privilege, or capacity on account of his religious opinions . . . . No person shall be required to attend or support any ministry or place of worship, religious sect or denomination,

_____

(2) RFRA, which may protect against incidental burdens incurred by generally applicable and neutral laws, as long as RFRA's multi-prong test is met.

15

or pay tithes against his consent; nor shall any preference be given by law to any religious denomination or mode of worship.

Idaho Const. art. I, § 4. This guarantee of religious liberty has been interpreted to provide more protection than the First Amendment of the United States Constitution. *Osteraas v. Osteraas*, 124 Idaho 350, 355, 859 P.2d 948, 953 (1993). This is so because "religious opinion" is "a broad term that would seem to include not only traditional religious beliefs but also one's opinions as to religion in general." *Id.* However, like the First Amendment, this provision does not protect against conduct that violates a neutral statute of general applicability simply because such conduct may be engaged in for religious reasons. *State v. Fluewelling*, 150 Idaho 576, 579, 249 P.3d 375, 378 (2011). As expressed above, 42 U.S.C. § 666(a)(13), I.C. § 73-122, and I.C. § 54-5210 are all generally applicable and neutral laws justified by rational purposes, and as such, the incidental burden they impose on Ricks' free exercise of his religion does not amount to a violation of Article 1, Section 4 of the Idaho Constitution. Therefore, the district court did not err in dismissing this claim.

## C.    Ricks' Contract Rights Are Not Violated

Ricks argues that conditioning licensure upon the provision of a social security number violates his right to contract. "[T]he right to make contracts is embraced in the conception of liberty as guaranteed by the [Fourteenth Amendment to the] Constitution." *Chicago, B. & Q.R. Co. v. McGuire*, 219 U.S. 549, 566 (1911). However, "that freedom of contract is a qualified, and not an absolute, right. There is no absolute freedom to do as one wills or to contract as one chooses." *Id.* at 567. "Equally fundamental with the private right [to contract] is that of the public to regulate it in the common interest." *Nebbia v. People of New York*, 291 U.S. 502, 523 (1934).

Idaho Code § 73-122 and I.C. § 54-5210 serve a purpose in the common interest. By bringing Idaho law into compliance with 42 U.S.C. § 666(a)(13), I.C. § 73-122 aids Congress's objective to improve child support enforcement effectiveness. In passing I.C. § 54-5210, the Idaho Legislature declared, "it is in the public interest to provide a mechanism to remove from practice incompetent, dishonest, or unprincipled practitioners of construction. To aid in fulfilling these purposes, this chapter provides for the registration of construction contracts within the state of Idaho." I.C. § 54-5202. The purposes behind these two statutes motivate legitimate exercises of police power.

16

The requirement that a social security number be listed on an application for an Idaho contractor license does qualify Ricks' right to contract. But because that requirement pursues legitimate state objectives, it does not violate Ricks' contract rights, nor does it amount to a due process violation. Thus, the district court did not err in dismissing Ricks' contract rights claim.

Relatedly, Ricks argues that 42 U.S.C. § 666(a)(16) does not grant Idaho the ability to limit his contract rights by denying him a contractor's license for failure to provide a social security number. He contends 42 U.S.C. § 666(a)(16) only permits Idaho to deny a license to individuals with "overdue [child] support or [who have] fail[ed], after receiving appropriate notice, to comply with subpoenas or warrants relating to paternity or child support proceedings." Ricks raises this argument for the first time on appeal. Issues not raised below may not be considered for the first time on appeal, thus we do not address Ricks' new argument here. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

## IV.

## CONCLUSION

It is unclear whether Ricks has shown that he exhausted all administrative remedies available to him prior to seeking judicial review. To the extent this Court has subject matter jurisdiction to review Ricks' appeal, the merits of his claims also fail. Ricks' FERPA claim is preempted by 42 U.S.C. § 666(a)(13), his RFRA claim is not properly alleged, and neither his claim under the First Amendment of the United States Constitution nor Article I, Section 4 of the Idaho Constitution compel the conclusion that Ricks' free exercise rights have been violated. Additionally, Ricks has not shown his right to contract is violated by I.C. § 73-122 or I.C. § 54-5210. Thus, the district court did not err in dismissing these claims and the judgment is affirmed. Costs but not attorney fees are awarded to respondents on appeal.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

17